UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CRAIG DELIGDISH, MD, an individual,
PALM BAY MEDICAL OFFICE
CORPORATION, a Florida corporation,

     Plaintiff,

v.                                                  Case No. _____

CITY OF PALM BAY, a Florida
municipal corporation,

     Defendant.

_____/

## COMPLAINT FOR EQUAL PROTECTION VIOLATION AND RELATED DECLARATORY JUDGMENT

Plaintiffs CRAIG DELIGDISH, M.D. ("Deligdish") and PALM BAY MEDICAL OFFICE CORPORATION ("PBM") (Deligdish and PBM, together, "Plaintiffs") bring this action against Defendant CITY OF PALM BAY (the "City"), claiming that the City has violated PBM's rights under the Equal Protection Clause of the United States Constitution and otherwise violated other of Plaintiffs' interests and rights under applicable Florida law.

### INTRODUCTION

1. This suit is the culmination of years of mismanagement and haphazard, illegal application of the City's laws to development in the City.

2. Specifically, the City has changed the application of its laws to the same types of facts and applications based on political whim and caprice. It has

failed to provide due process and proper rule of law to those seeking to avail themselves of their property rights within the City.

3.  In the City's attempt to deprive parties like Plaintiffs of their property rights, the City has also violated other laws. For example, as will be demonstrated, *infra*, the City has violated the new "SB 180" law, preventing municipalities from imposing undue burdens on property owners for certain limited timeframes. Also, the City has created a practice whereby it hides behind other development laws as a pretext to avoid following a new legislative enactment that plats receive administrative approval.

4.  Due to the violations described, *supra*, Plaintiffs are entitled to declaratory and injunctive relief.

## PARTIES

5.  Deligdish is an individual and medical doctor who resides in Brevard County and is the owner of PBM.

6.  PBM is a Florida limited liability company whose principal place of business is in Brevard County, Florida. It is managed by Dr. Craig Deligdish, M.D. (also, "Deligdish").

7.  Defendant City is a Florida municipal corporation existing entirely within Brevard County, Florida.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction based upon a federal question arising under 28 U.S.C. §1331 and Section 1 of the Fourteenth Amendment to the United States Constitution.

9.     This Court may exercise personal jurisdiction over the City because it is a municipality incorporated in the State of Florida and thus operates, conducts, engages in, and carries on business in the state of Florida and has an office or agency in the State of Florida. Likewise, PBM is a limited liability company created in Florida, operating in Florida, owned by Deligdish, himself a Florida resident.

10.     Venue is proper in the Middle District pursuant to 28 U.S.C. §1391 because the City is located in this District and all events giving rise to Plaintiffs' claims occurred in this District.

## GENERAL FACTUAL ALLEGATIONS

11.     This lawsuit arises out of the City's failure to work with Plaintiffs on multiple pending matters regarding real property that PBM owns and is more particularly described in Exhibit A (the "Property").

12.     The Property comprises a portion of a much larger portion of real property, around 178 acres, inclusive of rights of way (approximately 163 acres without rights of way), described in Exhibit B and otherwise colloquially known as the "Bayside Lakes PUD."

13.     The City approved the Bayside Lakes PUD in 1999. *See* Exhibit C (the "Approval"). The Approval notes that there would be a "Commercial Center," which would be a mixed-use development including "commercial sites."

14. Thus, importantly, at the time of the Approval, the development standards for the real property within the Bayside Lakes PUD were limited and proscribed to commercial uses allowed in the Community Commercial zoning district. In order to see the details what those were, one need only review what is permitted in the City's Community Commercial zoning district.

15. The proposed commercial lots would be limited to those in the City's Community Commercial District, subject to some prohibitions. The Property is subject to this portion of the PUD.

16. Shortly thereafter, in 2000, a declaration of covenants and restrictions was recorded governing real property located at the Bayside Lakes PUD. *See* Exhibit D (the "Declaration"). The terms of the Declaration do not conflict with the Approval; rather, they are consistent with it and enable commercial uses of the Bayside Lakes PUD.

17. The Declaration did not prohibit self-storage. But it did include a statement that "the Developer to its successors and assigns reserve the right to change, modify, or amend the intended uses of all institutional and commercial lots at their discretion." Accordingly, simply to make clear the intended use of a portion of the Property, the developer did just that permitting self-storage facilities in the Eleventh Amendment to the Declaration, attached hereto as Exhibit E.

18. Additionally, in 2007, a site plan was proposed and approved by the City to allow development of the Property as a medical / professional center. In 2024, the site plan was revised and approved to allow for a retail building but had

4

left the remaining portion of the Property without an identified use. Importantly, the site plans had very specific development standards regarding setbacks, maximum building height, landscaping buffers, and impervious area allowed.

19.    Since 1999, different owners and developers have acted upon the rights contained within the Bayside Lakes PUD, creating dynamic commercial uses that have brought business, jobs, and prosperity to the City.

20.    In the years since approval of the Bayside Lakes PUD, the City has grown and become more complex. The City has frequently been called upon to review and approve planned unit developments ("PUDs"), preliminary development plans ("PDPs"), and final development plans ("FDPs") for sites within the City.

21.    When it did so, for many years prior to 2024, the City used the portions of its land development code for PUD zoning and both final and preliminary development plans attached as Exhibit F (the "Old Code").

22.    Upon information and belief, since 1999, multiple owners of real property within the Bayside Lakes PUD have created a self-storage use which did not need a preliminary or final development plan, however.

23.    Also upon information and belief, since 1999, multiple applicants and/or owners of real property within the Bayside Lakes PUD have been able to receive approval for a plat or replat of real property without needing to have a companion preliminary or final development plan.

5

24. One of those replats occurred in 2016, when a portion of the PUD, which included the Property, was re-platted. *See* Exhibit G.

25. In September 2024, the City adopted substantial, material changes to its land development code, specifically as relates to PUD zoning and both final and preliminary development plans. This revised code is attached as Exhibit H (the "New Code").

26. In or around December 2024, Deligdish and PBM sought the City's permission to amend the PUD zoning applicable to the Property so as to allow a self-storage facility to be developed on the Property. This was despite Plaintiffs' belief that it did not need any further zoning or development plan approvals for the self-storage use. The City denied the request.

27. In doing so, the City relied on the standards and law contained in the New Code instead of the Old Code, as well as legal advice predicated upon the New Code.

28. Still, the City admitted that it made a mistake in considering the self-storage use by way of PUD zoning amendment. As a result, the City informed Plaintiffs that they could still seek the self-storage use—despite City Council denial—under §51.05 of the City's Code.

29. In 2025, the City also refused to review or approve a replat of the Property submitted by Plaintiffs because no PDP had been approved. At this time, Plaintiffs took the position that they did not need a PDP for a plat to be reviewed,

that it was not a proper precondition to such review or approval, and also that a PDP is unnecessary for self-storage use on the Property.

30. Despite Plaintiffs' objection that they did not need a preliminary development plan to allow for self-storage use, or any other similar approval, Plaintiffs asked for the City Council to consider allowing the self-storage use as part of a preliminary development plan because that is the only manner in which City staff would consider allowing the self-storage use. A staff report was prepared for the October 1, 2025 hearing at which Plaintiffs' request would be heard. *See* Exhibit I.

31. Prior to the October 1, 2025 hearing, Plaintiffs informed the City that it would not be attending the hearing and asked for it to be removed from the agenda. The City refused to remove it from the agenda. Instead, the City denied approval of the preliminary development plan.

32. Again, the staff, City Attorney, and City Council only applied the New Code to consideration of the preliminary development plan approval, not the Old Code.

33. Several emails and TEAMS conferences were held between City staff and Plaintiffs and Plaintiffs' representatives before and after the October 2025 hearing regarding this application. At many, if not all of them, Plaintiffs sought to understand the City's legal rationale for not approving the proposed plat that increased the number of lots on the Property as well as requiring PDPs and FDPs for the self-storage use.

7

34.    On multiple of these communications, Plaintiffs let the City know its position that the plat should be approved without regard to a PDP and a PDP should not be necessary for the self-storage use. Plaintiffs also highlighted for the City that other self-storage had been permitted without a PDP and other plats increasing the lots inside the Bayside Lakes PUD had been approved without any concurrent PDP being needed. Thus, the City was informed of its inconsistent and unfair positions.

## COUNT I – EQUAL PROTECTION CLAUSE VIOLATION

35.    PBM restates paragraphs 1 through 34.

36.    The City may not violate the Equal Protection Clause of the United States Constitution.

37.    The City has approved plats and replats for real property located inside the Bayside Lakes PUD.

38.    The City, with no reason or justification for its deviation from prior practice, has repeatedly denied review and/or approval of PBM's proposed plat. Instead, the City refuses to allow PBM to move the plat through the administrative approval process.

39.    The City claims that a PDP must be approved before the plat can be approved or properly reviewed.

40.    The New Code does not require a PDP to be approved before a plat or replat is approved, regardless of whether there is a PDP in existence for the property subject to the plat or replat or not.

8

41.     Additionally, the City has claimed that a PDP and/or FDP are necessary for PBM to allow a self-storage use in the Bayside Lakes PUD.

42.     But in the past, at least one other party has been allowed to have a self-storage facility without a PDP and/or FDP within the Bayside Lakes PUD.

43.     The failure to approve both the plat and the use, without a PDP, is arbitrary and capricious.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment in its favor finding that the City has violated the Equal Protection Clause of the United States Constitution by failing to approve Plaintiff's replat without a PDP and/or by failing to permit the self-storage use on the Property without a PDP, issue temporary and permanent injunctive relief to Plaintiff that would restrain the City from blocking the self-storage use and instructing the City to permit it, award damages, including nominal damages, and any other relief that this Court deems just and proper.

## COUNT II – DECLARATORY JUDGMENT FOR VIOLATION OF SB 180

44.     Deligdish restates paragraphs 1 through 34.

45.     In 2025, the Florida legislature passed §252.422, Fla. Stat. ("SB 180"), which broadly prohibits local governments, including municipalities, from adopting land use regulations that add burdens for property owners or persons seeking to develop their property.

46.     Specifically, for one (1) year after a hurricane makes landfall, SB 180 prohibits adopting *either* "[a] more restrictive or burdensome amendment to its...

9

land development regulations" *or* "[a] more restrictive or burdensome procedure concerning review, approval, or issuance of a... development permit, or development order...." *See* §252.422(2)(b), (c), Fla. Stat.

47.    In undesignated Section 28 of SB 180, the prohibitions applied retroactively to August 1, 2024, prior to the date that the New Code was adopted.

48.    The City was an "impacted local government" within the ambit of §252.422, Fla. Stat., because it is a municipality in Brevard County, Florida, which was cited in a federal disaster declaration within 100 miles of the track of a hurricane.

49.    In order for a plaintiff to challenge a given land development regulation, a plaintiff must provide written notice specifying the offending regulation(s) and giving the local government fourteen (14) days to remove the violation.

50.    On January 15, 2026, Plaintiff delivered a notice that complies with the presuit notice requirement of §252.422(4)(c), Fla. Stat. *See* Exhibit J (the "Notice").

51.    The City failed to remove the New Code, approve the plat without a PDP, or approve the self-storage use without a PDP within fourteen (14) days of receiving the Notice.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment in its favor finding that the City has violated SB 180 by (i) approving the New Code; (ii) failing to approve Plaintiff's plat; and/or (iii) failing to approve the

self-storage use on the Property, awarding a temporary injunction against the City pursuant to §252.422(4)(c), Fla. Stat., for which no bond should be required, which would enjoin the City from enforcing the New Code, and a permanent injunction against the City to the same effect, awarding damages to Plaintiff, including nominal damages in the event no other damages are found, awarding Plaintiff its reasonable attorney fees and costs incurred for bringing this lawsuit, the presuit notice, and presuit communications regarding this matter, and any other relief that this Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT FOR VIOLATION OF ADMINISTRATIVE PLAT APPROVAL STATUTE

52.    PBM restates paragraphs 1 through 34.

53.    On June 20, 2024, Senate Bill 812 ("SB 784") was signed by Governor DeSantis, amending §177.071, Fla. Stat., effective July 1, 2025.

54.    This amendment required that certain plat or replat submittals be administratively approved with no review or approval needed by the elected governing bodies of local governments.

55.    The City implemented its own procedures for administrative approvals of plats pursuant to SB 784.

56.    However, it is requiring that certain plat submissions not be approved, including the one submitted by PBM, until a PDP is approved.

11

57.    The requirement of a PDP, or any other legislative review or approval, obviates the clear command of SB 784. It can be used and is being used as a pretext to prevent approval of plats.

58.    This is particularly true in this case, where the Property already has clear development standards both from the original PUD and the approved site plans. There is no excuse whatsoever to not to review or approve the plat.

59.    The City does not agree and believes that it may prevent a plat from being approved prior to PDP approval when new lots are being created by the plat because increasing the number of lots is a material change that would require a new or amended PDP.

60.    PBM disagrees with the City's interpretation of the New Code and also does not believe the Old Code required it either.

61.    The City and PBM have a bona fide dispute and PBM is in doubt of its rights.

62.    PBM seeks a judicial declaration of its rights regarding whether its plat submission should be administratively reviewed and approved without need for City Council action on a PDP.

**WHEREFORE,** PBM respectfully requests that this Court issue a declaratory judgment in its favor that finds PBM is entitled to have its plat submissions administratively reviewed without the need for any PDP approval or amendment as a precondition to such review and/or approval, the award of

12

attorney fees and costs, as well as any other relief deemed just and proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: February 20, 2026            Respectfully submitted,

/s/ Christian W. Waugh
CHRISTIAN W. WAUGH
*Board Certified Real Estate Attorney*
Florida Bar No. 71093
AVERY L. DYEN
Florida Bar No. 1039478
WAUGH PLLC
201 E. Pine Street, Ste. 315
Orlando, FL 32801
321-800-6008: Phone
844-206-0245: Fax
Email: cwaugh@waugh.legal
Email: adyen@waugh.legal
Email: rwood@waugh.legal

13